## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JOSHUA K. BELL, on behalf of himself and all other similarly situated persons, <br><br> PLAINTIFF, <br><br> v. <br><br><br> COLLECTION PROFESSIONALS, INC., ROBERT B. STEELE, and APLINGTON, KAUFMAN, McCLINTOCK, STEELE & BARRY, LTD., <br><br> DEFENDANTS. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     Case No.: 1:23−cv−02719 <br>     Honorable Sharon Johnson Coleman |

## FIRST AMENDED INDIVIDUAL AND CLASS ACTION COMPLAINT

Plaintiff, Joshua K. Bell, brings this action to secure redress from unlawful credit and collection practices engaged in by Defendants Collection Professionals, Inc., Robert B. Steele, and Aplington, Kaufman, McClintock, Steele, and Barry, Ltd. Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA").

## VENUE AND JURISDICTION

1.    Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 42 U.S.C. 1983, and 28 U.S.C. §§ 1331, 1337, and 1367, as Defendants do business in the State of Illinois and because a material portion of the events at issue occurred in this District.

2.    Venue in this District is proper under 28 U.S.C. § 1391(b) because Defendants' collection demands were received here, a material portion of the events at issue occurred in this District, and Defendants reside and transact business here.

**PARTIES**

3.     Plaintiff, Joshua K. Bell ("Plaintiff"), is an individual and resident of LaSalle County, Illinois, and a "consumer" as defined at 15 U.S.C. § 1692a(3) of the FDCPA.

4.     At all times relevant hereto, Plaintiff resided at 2130 Market Street in Peru, Illinois.

5.     Defendant, Collection Professionals, Inc., ("CP") is a bad debt buyer and/or assignee that regularly collects defaulted consumer debts by mail, telephone and via the filing of lawsuits, on behalf of itself and others, and is thus a "debt collector" as that term is understood in the FDCPA, § 1692a(6).

6.     CP's principal business purpose is the collection of defaulted consumer debt through the mails and interstate commerce, such as credit reporting, as well as via litigation, and is thus a "debt collector" as that term is understood in the FDCPA, § 1692a(6).

7.     CP regularly collects defaulted and/or delinquent medical debts on behalf of others.

8.     CP collected or sought to collect over 5,000 defaulted and/or delinquent medical debts in the year 2022, on behalf of its clients.

9.     CP maintains a collection agency license from the State of Illinois.

10.     Robert B. Steele ("Steele") is an attorney licensed in the State of Illinois.

2

11.     Steele regularly collects defaulted consumer debts by mail, telephone and via filing lawsuits, on behalf of others, and is thus a "debt collector" as that term is understood in the FDCPA, § 1692a(6).

12.     Steele regularly directs consumers from which he seeks to collect debts to write checks out to him personally, specifically to "Robert B. Steele, P.O. Box 517, LaSalle, Illinois, 61301", though he is a principal of Aplington, Kaufman, McClintock, Steele, and Barry, Ltd.

13.     Steele regularly represents creditors and/or assignees of bad debts, such as CP, in connection with the collection of defaulted consumer debts from consumers.

14.     Aplington, Kaufman, McClintock, Steele, and Barry, Ltd. ("Aplington") is engaged in the business of a law firm, using the mails, courts and telephone to collect defaulted consumer debts originally owed to others.

15.     Aplington regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another, and is a debt collector as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

16.     In the year 2022, Aplington filed over 1000 lawsuits on behalf of CP to collect defaulted consumer debts.

## STANDING

17.     Plaintiff has Article III standing because, *inter alia*, Defendants Steele, CP and Aplington failed to provide Plaintiff with required information about the creditors to which the alleged debt is purported to be owed, the amount of the alleged debt, and his right to contest or request verification of the debt/ascertain the identity of the original creditor, placing him at a distinct disadvantage in dealing with his alleged obligations. If

he had known about his rights and been provided communications that were legally mandated by the FDCPA, he would have timely disputed and sought verification of the debts—thereby requiring CP, Steele, and Aplington to cease litigating the collection action they filed against him and obtain verification, potentially preventing the filing of said action altogether, or at least forcing Defendants to halt the spurious litigation they have maintained against Plaintiff until they provided him verification of the same. *Lavallee v. Med-1 Solutions, LLC*, 932 F.3d 1049 (7th Cir. 2019).

18.    Plaintiff has Article III standing for the further reason that he was forced to pay money and spend substantial time to defend against a false claim by CP, in having to appear personally to defend the state action due to Defendants' false statement that he was required to appear in-person, and inclusion of a false, non-working help-line telephone number on a summons he was served, which CP listed as a number that Plaintiff may call if he wished to appear telephonically or via video conference. Thus, due to Defendants' misrepresentation as to the telephone number as well as the misrepresentation on the summons that he was required to appear "in-person", he expended money and lost time and money in appearing personally at his initial hearing when he did not legally have to do so. Defendants' actions caused Plaintiff severe emotional distress, loss of time, and financial loss and thus a concrete injury, necessitating that Plaintiff pay money to an attorney and to the court to defend the false claim.

19.    Plaintiff has Article III standing for the further reason that Plaintiff suffered a concrete injury due to Defendants' actions as Defendants caused to filed an "Amended Complaint" in a state court collection action which had, attached thereto,

4

Plaintiff's medical records and bills which revealed and communicated Plaintiff's private and confidential medical records to the public. Specifically, the Amended Complaint revealed his medical condition, medical account numbers, and medical treatment and prescription medicine alleged to have been rendered to Plaintiff, and thus his private medical information. Such actions constitute an invasion of Plaintiff's privacy and thus a concrete injury.

20.     Plaintiff has Article III standing for the further reason that Plaintiff suffered a concrete injury due to CP's actions as CP communicated false and defamatory credit information about the alleged debt to the Experian credit reporting agency, and thus published said information to said agency, which resulted in a lower credit score for Plaintiff than he would have had if CP has communicated accurate credit information.

## FACTS

21.     Plaintiff was alleged by CP, Steele and Aplington to incur various medical debts for non-elective health care.

22.     The obligations were thereafter declared to be in default.

23.     Plaintiff thus incurred an alleged obligation ("alleged debt") as that term is understood under § 1692a (5).

24.     The alleged debt was not incurred in connection with Plaintiff's employment, nor in connection with any business matter.

25.     The alleged debt stems from alleged assignments made from various creditors to CP, for medical care asserted by CP to have been rendered to Plaintiff.

26.     CP alleges to have been assigned the alleged debt via the execution of two documents, each titled "Assignment of Claim for Collection".

27.    Each "Assignment" listed Plaintiff as the "Debtor".

28.    On or around May 4, 2022, CP mailed a letter ("Letter") to the Plaintiff seeking to collect various debts from him. (Exhibit A, Letter).

29.    The Letter lists five different alleged debts, as follows:

| Creditor | Regarding | Principal | Interest | Amt Owed |
|---|---|---|---|---|
| HOSPITAL RADIOLOGY | JOSHUA | 214.00 | 47.55 | 261.55 |
| ST MARGARET'S HEALTH SPRI | JOSHUA BELL | 2132.77 | 346.79 | 2479.56 |
| ST MARGARET'S HEALTH SPRI | JOSHUA | 500.02 | 70.89 | 570.91 |
| IL VALLEY COMMUNITY HOSPI | BELL, JOSHUA K | 11585.00 | 787.11 | 12372.11 |
| IL VALLEY COMMUNITY HOSPI | BELL, JOSHUA K | 594.00 | 40.36 | 634.36 |
| | | 15025.79 | 1292.70 | 16318.49 |

30.    The Letter also reads in part as follows:

The creditor(s) highlighted above, has concurred with our recommendation that they file suit to enforce payment on the total amount due. We are in receipt of all documentation necessary for filing suit and it awaits attorney referral. We would still prefer that you pay in full, voluntarily, and save the extra costs associated with such actions, however, it is strictly up to you.

We sincerely hope you take advantage of this opportunity to contact our office with an acceptable payment offer. If you do not, your paperwork will be forwarded to an attorney at our earliest convenience. The balance provided on this notice may be different from the actual amount owed due to the accrual of interest.

31.    The Letter thus states that CP has recommended to various client creditors that they file suit to enforce payment on the total amount due.

32.    CP is not a law firm, however.

33.    CP's "recommendation" that they file suit thus constitutes the unauthorized practice of law.

34.    CP's Letter also contains false threats.

6

35.     Specifically, the Letter threatens to file suit to enforce payment "on the total amount due", which is a false threat as CP has failed to date to do so.

36.     Further, the Letter falsely implies that Plaintiff will be responsible for "extra costs associated with such actions", which falsely implies that "extra costs" *will* be awarded despite any defenses Plaintiff may have.

37.     In other words, the Letter communicates that judgment in favor of CP, and the award of costs against Plaintiff, is a foregone conclusion when in fact it is not, since Plaintiff could have prevailed in any future-filed case brought against him to collect the alleged debt, an thus costs would not be awarded or due from Plaintiff.

38.     The Letter also refers to an alleged debt of $261.55, that it states is owed to "Creditor" identified as "Hospital Radiology".

39.     The letter reads that the alleged debt is "Regarding" an individual named only as "Joshua".

40.     The statement that Plaintiff owes $261.55 to a "Creditor" named "Hospital Radiology" is false.

41.     "Hospital Radiology" is not a creditor to which Plaintiff owes money.

42.     The Letter also states that the "balance provided on this notice may be different from the actual amount owed…".

43.     Based on the confusing and conflicting content of the Letter, Plaintiff could not ascertain the amount of money he owed, and thus he did not seek to resolve the alleged debt.

44.     CP thereafter hired Steele and Aplington to collect the alleged debt from the Plaintiff, by filing an action in LaSalle County, Illinois.

45.     Specifically, on September 26, 2022, Steele and/or Aplington, on behalf of CP, filed a lawsuit against Plaintiff titled *Collection Professionals, Inc. v. Joshua K. Bell,,* Case No. 2022LM00011, in the Circuit Court of The Thirteenth Judicial Circuit, LaSalle County, Illinois ("State Action"). (Exhibit B, Complaint and Summons).

46.     The State Action complaint included two counts, based on two "Assignments", and sought to collect $15,161.79 from Plaintiff.

47.     The Letter, however, states that $16,318.49 was the total amount due from Plaintiff, which conflicts with the information stated in the State Action complaint.

48.     The first assignment purports to be from St. Margarets Health Peru to Collection Professionals, Inc., for an alleged debt in the amount of $12,179.00. (Exhibit B, Complaint and Summons).

49.     The "Debtor" listed on the assignment was Plaintiff "Joshua Bell".

50.     Count I, based on the alleged debt referenced in the first assignment, states that $12,529.00 is due and owing from Plaintiff, "which includes $350.00 reasonable attorney fees".

51.     There is no legal or factual basis for stating that $350 in "reasonable attorney fees" is due and owing.

52.     No court has awarded CP attorney fees or determined that said amount of fees, that are stated to be "due and owing" are reasonable.

53.     The statement that $350.00 in "reasonable attorney fees" is due and owing from Plaintiff is thus false.

54.     Moreover, the amounts of $12,179.00 and $12,529.00 alleged in the complaint to be owed to "St. Margarets Health Peru" do not correspond to any of the debt amounts, or creditors, referenced in the Letter.

55.     Either the information in the Letter relating to the amounts sought and creditors owed is incorrect, or the information in the State Action complaint is incorrect; they cannot both be right and thus the information in either the Letter or complaint is false.

56.     Paragraph 4 in Count I states as follows:

4.   That there is a financial consent form signed, a photostatic copy of the form being herewith attached and incorporated herein as though fully set forth as "Exhibit B."

57.     "Exhibit B" however does not contain a "signed" photostatic copy, as the face of the document purports that the medical provider obtained "verbal consent", which Plaintiff also denies.

58.     Defendants' reference to a "signed" financial consent from is false, and calculated to fool Plaintiff into believing that CP has the right to collect the amounts sought from him, including attorney fees that it falsely states are already "due and owing".

59.     Paragraph 2 in Count I states as follows:

2.   That there is still due and owing to the Plaintiff the sum of TWELVE THOUSAND FIVE HUNDRED TWENTY-NINE and 00/100 Dollars ($12,529.00), which includes $350.00 reasonable attorney fees, for various dates of service, and that demand for payment of said sum has been duly made upon Defendant, JOSHUA K. BELL and said payment has been refused.

60.     Defendants' statement that CP or anyone on its behalf demanded "said sum" from Plaintiff, and that Plaintiff refused to pay it, is false and defamatory.

61.     In truth and in fact, neither CP nor anyone on its behalf has asked Plaintiff to pay the amounts sought, and Plaintiff has accordingly not "refused" to do so.

62.     Count II, based on the alleged debt referenced in the second purported assignment, states that $2,632.79 is due and owing from Plaintiff.

63.     As with Count I, paragraph 2 in Count II states that "…demand for said sum has been duly made upon Defendant, JOSHUA K. BELL, and said payment has been refused".

64.     Defendants' statement that CP or anyone on its behalf demanded "said sum" from Plaintiff, and that Plaintiff refused to pay it, is false and defamatory.

65.     In truth and in fact, neither CP nor anyone on its behalf has asked Plaintiff to pay the amounts sought, and Plaintiff has accordingly not "refused" to do so.

66.     Defendants have also created and utilized a form of summons that contains false, deceptive and misleading information, that constitutes an unfair and unconscionable method of collecting debts.

67.     The Summons states in part as follows:

***SUMMONS***

To each defendant: JOSHUA K BELL, 2130 MARKET ST, PERU, IL, 61354

You are hereby summoned and required to appear **IN PERSON** before this court at the LASALLE County Courthouse, 119 WEST MADISON ST., OTTAWA, IL, 61350 Room 206 at 9:00 AM on 11/22/2022 to answer the complaint in this case, a copy of which is hereto attached. **IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.**

"You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at 815-434-8672 or visit their website at https://lasallecounty.com/ to find out how to do this.
E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org. If you are unable to pay your court fees, you can apply for a fee waiver, for information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application."

68. The Summons was not a form document approved by the Illinois Supreme Court, but rather was created by one or more of the Defendants.

69. The Summons thus states, in large capital and bold font, that Plaintiff "…is summoned and required to appear **IN PERSON**…" at the LaSalle County Courthouse.

70. The statement is false, however, since Plaintiff was not legally required to appear "**IN PERSON**" at the LaSalle County Courthouse.

71. In truth and in fact, Plaintiff had the option to appear via video or phone for his hearing at the LaSalle County Courthouse.

72. This option is established by information in the very same Summons which falsely states that Plaintiff is required to appear in person: though in a much smaller and barely readable font, the Summons goes on to read that "You may be able to attend this court date by phone or video conference. This is called a 'Remote Appearance', Call the Circuit Clerk at 815-434-8672…."

73. Both statements cannot be true. Either Plaintiff was required to appear in person, or not.

11

74.     The Summons thus communicates conflicting information on whether Plaintiff was required to appear in person at the LaSalle County Courthouse in order to appear and defend his case.

75.     Plaintiff was confused by the conflicting statements.

76.     As a result of his confusion as to whether he had to appear in person or not, Plaintiff placed a telephone call to the phone number listed on the Summons, that CP directed him to call: 815-434-8672.

77.     Plaintiff could not ascertain whether he had to appear in person, however, since the telephone number to which he was directed to call to be able to ascertain this information, which was 815-434-8672, was a non-working number.

78.     Defendants thus drafted a form summons which did not contain an accurate telephone number that consumers may call in order to obtain information about how to appear and defend their cases, leaving said consumers in the dark about their rights.

79.     As a result of the false and confusing information contained on the Summons, Plaintiff was forced to drive to the LaSalle Count Courthouse on November 22, 2023 to appear "in-person" in the State Action.

80.     Plaintiff expended time and money in order to appear in person, that he would not have expended had he known the truth, which was that he could have appeared remotely, and that the information on the Summons was false.

81.     An unsophisticated consumer would be confused by the false and confusing information contained in the Summons, and would not know whether he or she

was required to appear in person in court due to the misinformation contained in the Summons.

82.     An unsophisticated consumer would be more likely to forego appearing in court altogether as a result of the added burden of having to drive to court to appear in his case, as a result of the confusing and false information in the Summons.

83.     The content of the Summons is thus calculated to confuse and induce consumers to not appear in court, so that default orders and/or judgments may be entered against said consumers.

84.     On November 22, 2022, Plaintiff appeared in-person in the State Action, at the courthouse located at 119 West Madison Street in Ottawa, Illinois.

85.     At that time, before the hearing ensued, Plaintiff was directed to an agent or employee of Aplington and/or Steele, who identified himself as a "clerk" of Robert Steele, and a conversation ensued between Plaintiff and said agent or employee.

86.     During the course of said conversation, said agent or employee asked Plaintiff whether he admits to owing the alleged debt and whether he will agree to pay it.

87.     In response, Plaintiff requested an amount to settle the alleged debt, told said clerk that he was confused as to how much he owed and to whom, and said that he wanted to hire an attorney to defend him in the case.

88.     In response, said clerk forwarded the information obtained from Plaintiff to Steele, who drafted an order allowing Plaintiff time to obtain representation, which order was thereafter presented to the Court for entry, and filed.

89.     The November 22, 2022 conversation between Plaintiff and Steele and/or Aplington was the "initial communication" from Aplington and/or Steele to Plaintiff in connection with the collection of the alleged debt.

90.     The Fair Debt Collection Practices Act requires a debt collector to give a written notice to a consumer within five days of its initial communication with said consumer, that contains the name of the current creditor and the amount of the debt, and that gives the consumer notice of the right to dispute the debt, which if timely exercised requires the debt collector to cease collection (and litigation) of the alleged debt until it mails the consumer verification of the alleged debt. 15 U.S.C. § 1692g(a).

91.     Section 1692g's notice requirement is triggered regardless of whether the initial communication was directed at the consumer or his attorney. *Speights-Carnegie v. Blackstone Condominium Ass'n*, No. 15 C 03781, 2018 U.S. Dist. LEXIS 51499, at *22 (N.D. Ill. Mar. 28, 2018).

92.     The Fair Debt Collection Practices Act thus requires a debt collector to give a written notice to a consumer within five days of its initial communication with said consumer, or his attorney. 15 U.S.C. § 1692g(a). That notice must include, among other things, a description of two mechanisms that the debtor can use to verify her debt. First, a consumer can notify the debt collector "in writing" that she disputes all or part of the debt, which obligates the debt collector to obtain verification of the debt and mail a copy to the debtor. Id. § 1692g(a)(4). A failure to dispute the debt within 30 days means that the debt collector will assume that the debt is valid. *Id*. § 1692g(a)(3).

14

93.     A consumer can also make a "written request" that the debt collector provide her with the name and address of the original creditor, which the debt collector must do if a different creditor currently holds the debt. Id. § 1692g(a)(5).

94.     A debt collector must cease collection of a debt, by litigation or otherwise, if a consumer disputes a debt in writing within 30 days of the date he receives a Notice of Debt, until or unless the collector mails verification of the debt to the consumer. § 1692g(b).

95.     The initial communication with Plaintiff regarding the alleged debt occurred on November 22, 2022.

96.     Steele and/or Aplington was required to mail Plaintiff's counsel a Notice of Debt within five days of November 22, 2022.

97.     Defendants Steele and Aplington failed to provide Plaintiff with required information regarding his alleged debt within five days of their initial communication with Plaintiff—a "Notice of Debt" under section 1692g of the FDCPA—which would have informed Plaintiff of the amount of debt sought and the name of the alleged creditors to which she owed money, as well as his right to dispute the alleged deb and cause litigation to stop until verification was mailed to Plaintiff, by Aplington and/or Steele.

98.     Plaintiff experienced a concrete injury as a result of the Notice of Debt not being provided to him by Steele and/or Aplington, as Plaintiff would have exercised his right to request the identity of the original creditors and dispute the alleged debt in writing within 30 days of his receipt of a Notice of Debt by Steele and/or Aplington, which would have halted the State Action collection suit, or prevented it from proceeding altogether.

99.     Defendants' failure to provide Plaintiff a Notice of Debt thus impaired his ability to use the information, that was required to be contained therein, for a substantive purpose that the statute envisioned.

100.    Defendants' failure to provide information negatively affected Plaintiff's handling of his debts as he is to this date uncertain of the amounts which Defendants are seeking to collect from him, the identity of the alleged creditors who assigned the alleged debt, and the basis for and origin of the alleged debts.

101.    An unsophisticated consumer would be unable to ascertain the origin and amount of his debts, and he would have his legal right to obtain verification of the alleged debt and/or stripped, as a result of Steele and/or Aplington's failure to provide a Notice of Debt within five days of the initial communication with him, regarding an alleged debt.

102.    Aplington and/or Steele failed to provide Plaintiff with a timely Notice of Debt as required by section 1692g.

103.    Plaintiff would have timely disputed the alleged debt in writing had he been given notice of his rights to do so, by Aplington and/or Steele.

104.    Defendants Aplington and Steel violated 15 U.S.C. § 1692g, and said violation caused Plaintiff a concrete injury as described above.

105.    Plaintiff thereafter hired and paid an attorney to defend him in the State Action, as he was uncertain of the identity of the creditor to which he was alleged to owe money by CP, as well as the amounts that were sought.

106.    Plaintiff also was forced to hire and pay an attorney to defend him in the State Action for the reason that Defendants' actions and inactions gutted his ability to dispute the alleged debt in writing and cause CP to cease litigation until the alleged debt

16

was verified, specifically due to Aplington and CP's failure to provide him with a Notice

of Debt.

107.    On January 11, 2023, Plaintiff's counsel sent an email to Steele and

Aplington, that stated as follows:

**From:** mario.kasalo kasalolaw.com
**Sent:** Wednesday, January 11, 2023 12:40 PM
**To:** Robert Steele <robert.steele@akmsb.com>
**Subject:** Collection Professionals v. Bell/2022LM111

Mr. Steele:

Attached please find a copy of the efiled and accepted appearance filed in the above-referenced case. As you are aware, we will be filing a response and/or will otherwise plead in response to the allegations within 21 days, which allegations defendant denies.

Please forward the order. Thank you.

Mario Kris Kasalo
The Law Office of M. Kris Kasalo, Ltd.
4950 Madison St., P.O. Box 1425
Skokie, IL 60077
tele 312-726-6160
fax 312-698-5054
email mario.kasalo@kasalolaw.com

108.    Steele, on behalf of the other Defendants, received the email on January

11, 2023.

109.    The January 11, 2023 email to Steele communicated a dispute of the

alleged debt to Defendant CP, as Plaintiff's counsel informed Steele that Plaintiff denies

the allegations of the complaint that alleges that Plaintiff owes money to CP.

109.    A statement that "the amount reported is not accurate" evinces the

intention to dispute the validity of at least a portion of the purported debt. *Evans v.*

*Portfolio Recovery Associates, LLC*, 889 F.3d 337 (7th Cir. 2018).

110.    The FDCPA proscribes "(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, <u>including the failure to communicate that a disputed debt is disputed</u>." *Paz v. Portfolio Recovery Assocs., LLC*, 2016 U.S. Dist. LEXIS 160779, *8 (N.D. Ill. November 21, 2016) (emphasis added).

111.    CP communicated credit information to the Experian credit reporting agencies on a monthly basis after it began collecting the alleged debt.

112.    However, CP failed to communicate, over the last year, that Plaintiff's alleged debt was disputed when it communicated other credit information to the Experian credit reporting agency, even though Plaintiff repeatedly disputed the alleged debt to Defendants on multiple occasions before CP communicated credit information to Experian without also communicating that the alleged det was disputed.

113.    CP failed to communicate a dispute of the alleged debt to the Experian credit reporting agency, in violation of 15 U.S.C. § 1692e(8), when it knew or should have known about the dispute and communicated other information regarding the alleged debt to the credit reporting agency.

115.    Specifically, CP communicated credit information regarding the alleged debt to Experian in January, February, March and April of 2023, without also communicating that the alleged debt was disputed.

115.    A debt reported with no dispute results in a much lower credit score than a report of both the debt and the dispute. *Saunders v. Branch Banking and Trust Co. of VA*, 526 F. 3d 142, 146-47 (4th Cir. 2008).

116.   CP's collection efforts, including the damage to Plaintiff's credit score and credit profile, caused Plaintiff a lower credit score, a decreased ability to obtain credit, as well as lost credit opportunities.

117.   On or around July 13, 2023, Defendants Steele and Aplington, on behalf of CP, filed an "Amended Complaint" in the State Action. (Exhibit C, Amended Complaint without Exhibits).

118.   The Amended Complaint contained private medical information barred from public disclosure.

119.   The Amended Complaint contained documents that communicated the type and kind of medical care rendered to Plaintiff on July 6, 2020 and July 7, 2020, including the charges associated therewith.

120.   The Amended Complaint contained documents that communicated the type and kind of medical care rendered to Plaintiff on June 23, 2027 and December 31, 2017, including the charges associated therewith.

121.   The Amended Complaint communicated the type and kind of medication administered to Plaintiff on July 6, 2020 and July 7, 2020.

122.   The Amended Complaint communicated the type and kind of medication administered to Plaintiff on June 19, 2017.

123.   The Amended Complaint revealed Plaintiff's medical records and bills which revealed and communicated Plaintiff's private and confidential medical records to the public.

124.    Specifically, the Amended Complaint revealed his medical condition, medical account numbers, and medical treatment and prescription medicine alleged to have been rendered to Plaintiff, and thus his private medical information.

125.    Such actions constitute an invasion of Plaintiff's privacy and thus a concrete injury.

126.    Such actions are akin to the tort of publicity given to private life, which occurs when someone "gives publicity" to a "highly offensive" matter "concerning the private life of another" that "is not of legitimate concern to the public." Restatement § 652D.

127.    It is an unfair and unconscionable practice to reveal to the public a consumer's private medical information in connection with the collection of a debt.

128.    An unsophisticated consumer may decide to pay a debt in order to put a halt to such an action by a debt collector.

129.    Plaintiff was injured and suffered a concrete harm from the above-described disclosure.

130.    Defendants' actions caused intrusion upon Plaintiff's seclusion.

131.    Multiple individuals viewed Plaintiff's private medical information as a result.

132.    Plaintiff did not authorize his private medical information to be disclosed or viewed by the public.

133.    Defendants' actions are abusive unfair and unconscionable practices in violation of sections 1692d and 1692f.

## COUNT I—INDIVIDUAL COUNT—FDCPA

20

134.   Plaintiff incorporates the foregoing paragraphs as if set out fully herein.

135.   15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.   Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**. . . (2) The false representation of—**

**(A)    the character, amount, or legal status of any debt; or…**
**(B)     any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**

**. . .(3)    The false representation or implication that any individual is an attorney or that any communication is from an attorney.**

**. . . (5)    The threat to take any action that cannot legally be taken or that is not intended to be taken.**

**. . . (10)   The use of any false representation or deceptive** means to collect or attempt to collect any debt or to obtain information concerning a consumer.

136.   CP falsely threatened to file suit on the "total" amount due in the Letter, and falsely threatened that "extra costs associated with such actions" will be awarded, and CP implied and/or misrepresented that it was a law firm by "recommending" that its clients file suit, when in fact it was not authorized to do so as it cannot give legal advice as a collection agency, in violation of 15 U.S.C. §§ 1692e(2), 1692e(3), 1692e(5) and 1692e(10).

137. CP misrepresented the amount of money Plaintiff owed and to whom, and thus misrepresented the status, character and amount of the alleged debt, in violation of 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10).

138. CP misrepresented that attorney fees were due and owing from Plaintiff, and thus misrepresented the status, character and amount of the alleged debt, in violation of 15 U.S.C. § 1692e, 1692e(2), and 1692e(10).

139. Defendants' reference to a "signed" financial consent form is false, misleading and deceptive, as Plaintiff never signed a financial consent form, in violation of 15 U.S.C. § 1692e, 1692e(2), and 1692e(10).

140. Defendants' statement that CP or anyone on its behalf demanded "said sum" from Plaintiff is false and defamatory, in violation of 15 U.S.C. § 1692e, 1692e(2), and 1692e(10).

141. Section 1692f of the FDCPA provides as follows:

> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
> **(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.**

142. Defendants CP, Steele and Aplington sought to collect money from Plaintiff that was neither authorized by law nor by any agreement that created the alleged debt.

143. Specifically, CP, Steele and Aplington did not have the legal right to collect the alleged debt sought via the allegations contained in the State Action complaint.

22

144.    Defendants violated sections 1692e and 1692f of the FDCPA thereby.

145.    CP, through Steele and Aplington, claimed in the State Action complaint that attorney fees were already due and owing, though no court has awarded said fees to CP.

146.    No judgment has been entered in CP's collection action in state court.

147.    No court has ever ordered Plaintiff to pay the attorney's fees that his alleged creditor alleged to have incurred in the course of collecting her alleged outstanding debt.

148.    It would have been inaccurate, then, to tell him that the debt he owed already included $350 in attorney fees—that were already owed.

149.    By telling him that his balance already included attorney fees, and that CP has previously demanded payment of the same, CP represented to Plaintiff that he was obligated to repay both the alleged debt and CP's attorney fees.

150.    Plaintiff was not legally required to pay the $350 stated as being owed in attorney fees, and as a reasonable, unsophisticated consumer, there is no reason she would have known as much when CP indicated otherwise.

151.    CP, through Steele and Aplington, thus misrepresented that an amount was already due and owing that was not due and owing, not authorized by the agreement creating the alleged debt, nor allowed by law, in violation of sections 1692e and 1692f of the FDCPA.

152.    The State Action complaint reads that defendant is indebted to plaintiff in various amounts, which includes attorney fees of $350.

153.    The complaint goes on to read that CP has demanded payment of said $350 sum, and that Plaintiff refused to pay the same.

154.   The statement that CP had previously demanded payment of the amounts claimed, which include $350 in attorney fees, is false.

155.   Assuming arguendo that it were true, any attempt by CP to collect $350 in attorney fees before the complaint were filed and before such fees were awarded to CP by the court would have violated the FDCPA, sections 1692e and 1692f.

156.   Plaintiff was fooled into believing that he already owed attorney fees to CP at the time the State Action complaint and summons were filed, as a result of CP's statements in the complaint.

157.   An unsophisticated consumer would be fooled into believing that he already owed attorney fees and court costs to CP, as a result of CP's statement in the complaint.

158.   Plaintiff would have sought to resolve the alleged debt to buy peace, had Defendants communicated accurate information regarding the alleged creditors to which he was alleged to owe money, and had they not already added attorney fees, among other false amounts, and stated that said amounts were already owed.

159.   15 U.S.C. § 1692e of the FDCPA provides as follows:

> **False or misleading representations**
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**

160.   The FDCPA thus proscribes "(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

24

*Paz v. Portfolio Recovery Assocs., LLC*, 2016 U.S. Dist. LEXIS 160779, *8 (N.D. Ill. November 21, 2016) (emphasis added).

161.    CP communicated credit information regarding the alleged debt to the Experian credit reporting agency on a monthly basis within the last year.

162.    However, CP failed to communicate, each time it communicated credit information to Experian after Plaintiff disputed the alleged debt on January 11, 2023, that Plaintiff's alleged debt was disputed.

163.    CP failed to communicate a dispute of the alleged debt to the Equifax consumer reporting agency, in violation of 15 U.S.C. § 1692e(8), when it knew or should have known about the dispute and communicated other information regarding the alleged debt to Experian.

164.    Plaintiff was harmed by Defendants' actions taken in connection with the collection of the alleged debt, as he suffered physical manifestations of emotional distress, lost time and money, and suffered a lower credit score and diminished credit opportunities as a result.

165.    Plaintiff would not have had to pay an appearance fee and/or hire and pay an attorney had CP mailed him a Notice of Debt, and had Defendants told the truth about the amount he owed and the entities to which he owed said amount, including the allegedly "past due" status of attorney fees and costs.

166.    Plaintiff suffered loss of sleep as a result of Defendants' illegal collection attempts of the alleged debt.

167.    Plaintiff also lost time and money due to Defendants' illegal collection attempts.

168. Defendants also violated sections 1692f and 1692d by revealing Plaintiff's private medical information to the public by including the same in the Amended Complaint.

169. Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

170. CP bears the burden of monitoring the activities of those it enlists to collect debts on its behalf, including Aplington and Steele, and is liable for the actions taken to collect a debt on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 323 (7th Cir. 2016).

## COUNT II—CLASS COUNT— ALL DEFENDANTS—SPURIOUS SUMMONS

171. Plaintiff incorporates the foregoing paragraphs as if set out fully herein.

172. Defendants violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692d by serving Plaintiff with the form of summons contained in Exhibit B, as said summons misrepresented that Plaintiff was required to appear "IN PERSON" in the State Action in capital, large and bold font, yet communicated a conflicting yet barely readable option in a much smaller font that Plaintiff could appear remotely, and contained false information regarding how Plaintiff could contact the court to appear for a remote hearing.

173. The proposed class meets all requirements under 735 ILCS 5/2-801 and Fed. R. Civ. P. 23(a) and (b)(3).

174. The Summons within Exhibit B is a form document.

175. The Summons within Exhibit B is based on a template.

176.     The Class consists of (a) all persons in LaSalle County, Illinois, (b) on whom Steele and/or Aplington, on behalf of CP, served a summons in the form of that contained in Exhibit B, (c) where the summons was served between the time period starting one year prior to the filing of this action, and ending on the date of the filing of this action.

177.     Plaintiff may alter the parameters of the classes to conform to discovery.

178.     On information and belief, based on the fact that debts are assigned to collection agencies in groups of debts of similar type and vintage and not individually, the classes are so numerous that joinder of all members is impracticable.

179.     There are questions of law and fact common to the classes, which questions predominate over any questions affecting only individual class members. The predominant common questions include whether Defendants have a practice of collecting debts using the form document contained in Exhibit B.

180.     Plaintiff's claims are typical of the claims of the class members. All are based on the same legal and factual theories.

181.     Plaintiff will fairly and adequately represent the members of the classes.

182.     Plaintiff has retained counsel experienced in the prosecution of consumer credit and debt collection claims and class actions.

183.     Plaintiff has hired counsel that has been approved as counsel in previous FDCPA class actions that have been certified.

184.     The Class consists of more than 40 persons from whom Defendants attempted to collect defaulted consumer debts by using the form of summons contained in Exhibit B.

27

185.     A class action is superior for the fair and efficient prosecution of this litigation. Class-wide liability is essential to cause Defendants to stop the improper conduct. Many class members may be unaware that they have been victims of illegal conduct. Congress contemplated class actions as a means of enforcing the FDCPA.

<u>COUNT III—CLASS COUNT—ALL DEFENDANTS—<br>FAILURE TO PROVIDE NOTICE OF DEBT</u>

186.     Plaintiff incorporates the foregoing paragraphs as if set out fully herein.

187.     Defendants violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f, and 1692d and 1692g by failing to mail Plaintiff a Notice of Debt within five days of the initial communication with Plaintiff, which was a communication made outside of the LaSalle County courtroom by an individual that identified himself as Steele's clerk.

188.     The proposed class meets all requirements under 735 ILCS 5/2-801 and Fed. R. Civ. P. 23(a) and (b)(3).

189.     Defendants' failure to provide a Notice of Debt was made as to each member of the Class defined herein.

190.     The Class consists of (a) all persons in LaSalle County, Illinois, (b)against which a lawsuit was filed by Steele and/or Aplington, on behalf of CP (c) where the initial communication with Steele and/or Aplington was with Steele and/or Aplington or an employee and/or agent of Steele and/or Aplington at the LaSalle County courthouse prior to or after a hearing was held in their case (d) that were not sent a Notice of Debt by Steele and/or Aplington within five days of said hearing (e) during the time period that begins one year prior to the filing of this action, and ends on the date of the filing of this action.

191.     Plaintiff may alter the parameters of the classes to conform to discovery.

192.    On information and belief, based on the fact that debts are assigned to collection agencies in groups of debts of similar type and vintage and not individually, the classes are so numerous that joinder of all members is impracticable.

193.    There are questions of law and fact common to the classes, which questions predominate over any questions affecting only individual class members. The predominant common questions include whether Defendants have a practice of collecting debts without mailing a Notice of Debt within five days of the initial communication with a consumer regarding an alleged debt.

194.    Plaintiff's claims are typical of the claims of the class members. All are based on the same legal and factual theories.

195.    Plaintiff will fairly and adequately represent the members of the classes.

196.    Plaintiff has retained counsel experienced in the prosecution of consumer credit and debt collection claims and class actions.

197.    Plaintiff has hired counsel that has been approved as counsel in previous FDCPA class actions that have been certified.

198.    The Class consists of more than 40 persons from whom Defendants attempted to collect defaulted consumer debts and engaged in an initial communication in connection with the collection of said debt or alleged debt, yet failed or refused to thereafter mail a Notice of Debt within five days of said communication.

199.    A class action is superior for the fair and efficient prosecution of this litigation. Class-wide liability is essential to cause Defendants to stop the improper conduct. Many class members may be unaware that they have been victims of illegal conduct. Congress contemplated class actions as a means of enforcing the FDCPA.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and the Class, and against Defendants, as follows:

a) Statutory damages and actual damages for Plaintiff pursuant to 15 U.S.C. § 1692k;

b) Statutory damages and actual damages for each Class Member pursuant to 15 U.S.C. § 1692k;

c) Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);

d) Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.


Respectfully submitted,

By: */s/ Mario Kris Kasalo*
Mario Kris Kasalo
**The Law Office of M. Kris Kasalo, Ltd.**
4950 Madison St., P.O. Box 1425
Skokie, IL 60077
tel 312.726.6160
fax 312.698.5054
mario.kasalo@kasalolaw.com



## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


By: */s/ Mario Kris Kasalo*
Mario Kris Kasalo

30

**EXHIBIT A**

EXHIBIT A

# COLLECTION PROFESSIONALS, INC

\* 723 FIRST STREET \* P.O. BOX 416 \* LASALLE, IL 61301-0416 \* 815-223-0804 \*

---

1                                                  MAY 4, 2022

                                            512827

JOSHUA K BELL
2130 MARKET ST
PERU            IL 61354

| Creditor | Regarding | Principal | Interest | Amt Owed |
|----------|-----------|-----------|----------|----------|
| HOSPITAL RADIOLOGY | JOSHUA | 214.00 | 47.55 | 261.55 |
| ST MARGARET'S HEALTH SPRI | Joshua Bell | 2132.77 | 346.79 | 2479.56 |
| ST MARGARET'S HEALTH SPRI | Joshua | 500.02 | 70.89 | 570.91 |
| IL VALLEY COMMUNITY HOSPI | Bell, Joshua K | 11585.00 | 787.11 | 12372.11 |
| IL VALLEY COMMUNITY HOSPI | Bell, Joshua K | 594.00 | 40.36 | 634.36 |
| | | 15025.79 | 1292.70 | 16318.49 |

15401.04
04 w/Fee

The creditor(s) highlighted above, has concurred with our
recommendation that they file suit to enforce payment on
the total amount due.  We are in receipt of all documentation
necessary for filing suit and it awaits attorney referral.
We would still prefer that you pay in full, voluntarily,
and save the extra costs associated with such actions,
however, it is strictly up to you.

We sincerely hope you take advantage of this opportunity to contact
our office with an acceptable payment offer.  If you do not, your
paperwork will be forwarded to an attorney at our earliest
convenience. The balance provided on this notice may be
different from the actual amount owed due to the accrual of interest.

                                        Sincerely yours,

                                        COLLECTION PROFESSIONALS, INC.

YOU CAN MAKE PAYMENT AT:     **WWW.COLLPROFINC.COM**

Collection Professionals Inc. is a debt collection agency.  This is
an attempt to collect a debt and any information obtained
will be used for that purpose.

**EXHIBIT B**

IN THE CIRCUIT COURT OF THE 13TH JUDICIAL CIRCUIT
LASALLE COUNTY, ILLINOIS

COLLECTION PROFESSIONALS, INC.

                Plaintiff(s)

      Vs                           No  **2022LM000111**

JOSHUA K BELL

                    Defendant(s)

### *SUMMONS*

To each defendant: **JOSHUA K BELL, 2130 MARKET ST, PERU, IL, 61354**

      You are hereby summoned and required to appear **IN PERSON** before this court at the LASALLE County Courthouse, 119 WEST MADISON ST., OTTAWA, IL, 61350 Room <u>206 at 9:00 AM on 11/22/2022</u> to answer the complaint in this case, a copy of which is hereto attached. **IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT.**

    "You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance", Call the Circuit Clerk at 815-434-8672 or visit their website at https://lasallecounty.com/ to find out how to do this.

    E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org. If you are unable to pay your court fees, you can apply for a fee waiver, for information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also as your local circuit clerk's office for a fee waiver application."

### NOTICE to PLAINTIFF or PLAINTIFF'S ATTORNEY:

When preparing the above **SUMMONS**, you will insert a return day not less than 40 or more than 61 days after the date of issuance.

To the officer:

    This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service, **AND NOT LESS THAN 21 DAYS BEFORE DAY OF APPEARANCE.** If service cannot be made, this summons shall be returned so endorsed.

                                 WITNESS,           9/26/2022        , 20___.

(Seal of court)                                        SLW

                                            (Clerk of the Circuit Court)

Name: Robert B. Steele ARDC#2712407, robert.steele@akmsb.com
Attorney for: Plaintiff
Address: P.O. Box 517
City: LaSalle, IL 61301
Telephone: (815) 224-3252
7000035837
This is an attempt to collect a debt, and any information obtained will be used for that purpose. This communication is from a debt collector.

IMPORTANT INFORMATION FOR THE PERSON RECEIVING THIS FORM:

You have been sued.
Follow the instruction below on how to appear/answer.

- If you do not appear, the court may decide the case without hearing from you and enter a judgment against you for what Plaintiff is asking.
- Your written *Appearance* must be filed on time and in the proper form.
- Forms for a written *Appearance* are available here: illinoiscourts.gov/forms/approved/default.asp.
- If Plaintiff is suing you for $10,000 or less, you do not need to file an *Answer/Response* unless the judge orders you to do so.
- You may file an *Answer/Response* found here: illinoiscourts.gov/forms/approved/default.asp.
- If you cannot afford to pay the fee for filing your *Appearance* and *Answer/Response*, ask the Circuit Clerk for an *Application for Waiver of Court Fees* found here: illionoiscourts.gov/forms/approved/default.asp.
- Read all the documents attached to this *Small Claims Summons*

**FILED**

13TH JUDICIAL CIRCUIT
9/26/2022 10:26 AM
SLW

*Gary Vaccaro*
CLERK OF THE CIRCUIT COURT
LASALLE COUNTY, ILLINOIS

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL DISTRICT
LASALLE COUNTY, OTTAWA, ILLINOIS

COLLECTION PROFESSIONALS, INC. )
      Plaintiff, )
                            )    NO.
VS. )    **2022LM000111**
                            )
JOSHUA K. BELL )
                            )
      Defendants. )

## COMPLAINT
### COUNT I

COLLECTION PROFESSIONALS, INC., Plaintiff, as Assignee of ST. MARGARETS HEALTH PERU, by its attorney, Robert B. Steele:

1. That, ST. MARGARETS HEALTH PERU, furnished services at the special instance and request of the Defendant, JOSHUA K. BELL, for which defendant JOSHUA K. BELL, promised to pay the Plaintiff.

2. That there is still due and owing to the Plaintiff the sum of TWELVE THOUSAND FIVE HUNDRED TWENTY-NINE and 00/100 Dollars ($12,529.00), which includes $350.00 reasonable attorney fees, for various dates of service, and that demand for payment of said sum has been duly made upon Defendant, JOSHUA K. BELL and said payment has been refused.

3. That Plaintiff herein is assignee of ST. MARGARETS HEALTH PERU and a copy of the Assignment is attached hereto as "Exhibit A."

4. That there is a financial consent form signed, a photostatic copy of the form being herewith attached and incorporated herein as though fully set forth as "Exhibit B."

1

<u>COUNT II</u>

COLLECTION PROFESSIONALS, INC., Plaintiff as Assignee of ST. MARGARETS HEALTH SPRING VALLEY, by its attorney, Robert B. Steele:

1. That ST. MARGARETS HEALTH SPRING VALLEY, furnished services at the special instance and request of the Defendant, JOSHUA K. BELL, for which Defendant, JOSHUA K. BELL promised to pay the plaintiff.

2. That, there is still due and owing to the Plaintiff the sum of TWO THOUSAND SIX HUNDRED THIRTY-TWO and 79/100 Dollars ($2,632.79), for various dates of service, and that demand for payment of said sum has been duly made upon Defendant, JOSHUA K. BELL, and said payment has been refused.

3. That Plaintiff herein is Assignee of ST. MARGARETS HEALTH SPRING VALLEY and a copy of the Assignment is attached hereto as "Exhibit C."

2

WHEREFORE, Plaintiff, COLLECTION PROFESSIONALS, INC., prays

for judgment against JOSHUA K. BELL for principal and reasonable attorney fees in the

amount of FIFTEEN THOUSAND ONE HUNDRED SIXTY-ONE and 79/100 Dollars

($15,161.79) plus interest and costs of suit.

COLLECTION PROFESSIONALS, INC.,

Plaintiff

By: _____

One of Their Attorneys.

<u>CERTIFICATION</u>

Under penalties as provided by law pursuant to section 1-109 of the Code of
Civil Procedure, the undersigned certifies that the statements set forth in this instrument
are true and correct, except as to matters therein stated to be on information and belief
and as to such matters the undersigned certifies as aforesaid that he verily believes the
same to be true.

_____
Plaintiff

SUBSCRIBED and SWORN to
before me this 16 day
of September A.D., 2022

_____
NOTARY PUBLIC

OFFICIAL SEAL
NICOLE SCHOLLE
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 3/19/26

Aplington, Kaufman, McClintock,
Steele, & Barry, Ltd.
Robert B. Steele #2712407
Attorneys at Law
P.O. Box 517
LaSalle, IL 61301-0517
(815) 224-3252
(815) 224-3205- Fax

3

## ASSIGNMENT OF CLAIM FOR COLLECTION

Debtor(s) JOSHUA BELL

Amount Owed: $12,179.00

For good and valuable consideration, **ST. MARGARET'S HEALTH PERU**, (hereinafter "Creditor") as owner and holder of the above claim against Debtor(s), hereby assigns all rights and interest in the above claim to COLLECTION PROFESSIONALS, INC. (hereinafter "Collection Agency" or Agency"). It is expressly agreed that the Collection Agency may initiate proceedings in its own name or take any lawful action deemed necessary by it to obtain satisfaction of the claim.

The parties acknowledge that this assignment is pursuant to 225 ILCS 425/8b of the Illinois Collection Agency Act. Collection Agency agrees to pay to Creditor **65%** of the net proceeds that Collection Agency recovers from Debtor. The net proceeds shall be defined as all payments by Debtor to Agency upon the claim, excluding payments made upon judgment interest and **after** reimbursement to Agency of any sums advanced or expended by Agency for court costs, service fees or other disbursements or expenses necessarily and reasonably incurred by Agency in the prosecution of collection of this account.

Creditor hereby warrants as follows:

1. Creditor is valid owner of said claim, which debt has not been previously assigned or conveyed. Further the debt has not been discharged by bankruptcy or release.
2. That the services or merchandise upon which the claim is based were sold, furnished and delivered to Debtor at Debtor's request. That the charges made were reasonable or agreed upon prices.
3. That Collection Agency shall not be required to assume any obligation or liability Creditor may owe Debtor.
4. That Creditor shall take no action to discharge the debt or hinder the collection of the debt after the effective date of this Assignment to Agency.
5. That allowing all proper credits and setoffs, there is due and owing from the Debtors(s) the sum of $12,179.00 as hereinabove set forth.
6. That this Assignment is a voluntary assignment of Creditor's account against Debtor.
7. Creditor agrees to cooperate as necessary with Agency in the collection of this matter and supply Agency with information, documents or materials required to properly collect the claim, including witnesses as needed for trial upon the claim.
8. That the undersigned has the authority to execute and acknowledge this Assignment on behalf of Creditor.

The effective date of this Assignment is _____ JANUARY 27, 2022 _____

By: _Carrie Mrowicki_      _Carrie Mrowicki_

    Signature                 Print Name

Creditor or its Authorized Representative: **ST. MARGARET'S HEALTH PERU**
                   (f/k/a ILLINOIS VALLEY COMMUNITY HOSPITAL, INC.)

**Please Return to:**
CPI, PO Box 416, 723 First St., Lasalle IL 61301 * 815-223-0804 * FAX: 815-223-0896

This is an attempt to collect a debt and any information obtained will be used for that purpose

Exhibit A



Illinois Valley Community Hospital
925 West Street, Peru, Illinois 61354
815-223-3300

*Caring Professionals*



BELL, JOSHUA K

Visit ID: 11561894

10/05/1982          37Y/M

MRN: 270311

## GENERAL CONSENT AND FINANCIAL AGREEMENT

1. I, _____Self_____, by **JOSHUA K BELL** believe I have a condition requiring medical care, hereby voluntarily consent to such care. I consent to x-ray examinations, laboratory procedures, medical treatment, emergency treatment or other hospital service, including nursing care, rendered to me under general or special instructions of attending, consulting, emergency department or other providers. This consent includes, but is not limited to, the administration of fluids, blood and/or blood products/components, medication and any radiology procedures.

2. I UNDERSTAND:

   2.1 The practice of medicine and surgery is not an exact science. I acknowledge that no guarantees have been made to me as to the diagnosis or result of examination or treatment at the hospital.

   "Under federal regulations, a 'health care provider' is defined as: a doctor of medicine or osteopathy, podiatrist, dentist, chiropractor, clinical psychologist, optometrist, nurse practitioner, nurse-midwife, physician assistant or a clinical social worker who is authorized to practice by the State and performing within the scope of their practice as defined by State law."

   2.2 Employment status of Medical Staff Providers

      a. Employed Providers are employed by Illinois Valley Community Hospital.
      **See printed Addendum 2.2a that contains the list of currently employed providers.**

      b. Non-employed Independent Providers: all providers other than those listed in 2.2a, are not employees or agents of Illinois Valley Community Hospital. Instead, these providers are independent medical practitioners who have been permitted to use the hospital's facilities and to exercise their independent medical judgement in the care and treatment of their patients.

      c. **I acknowledge the employment status of the Provider(s) who treat me is not relevant to my selection of Illinois Valley Community Hospital for my medical care and treatment.**

      d. I understand I will receive a separate bill for services from each of these independent providers or groups for the services provided. I am solely responsible for the payment of any bills received from these independent providers. These independent providers may or may not participate in managed care contracts and it is my responsibility to confirm their participation in any particular managed care plan.
      **I have read and understand Sections 2.2 a-d.**          PATIENTS INITIALS X_____

   2.3 That hospital authorized nursing and allied health students accompany and sometimes participate with provider(s) and hospital staff in the delivery of, as well as the observation of care.

Exhibit B



**Illinois Valley Community Hospital**
925 West Street, Peru, Illinois 61354
815-223-3300
Caring Professionals



**BELL, JOSHUA K**

**Visit ID: 11561894**
10/05/1982          37Y/M
MRN: 270311

2.4 That any authorization or consent I have given may be cancelled or revoked by me in writing at any time.

2.5 That I have a right to express a concern or grievance regarding any quality of care issue either informally or formally through the patient grievance mechanism established by the hospital.

3. I understand and agree that money, jewelry and other valuables should not be brought into the hospital; but if I do bring them into the hospital, I agree they should be deposited with Patient Access at the hospital or sent home by me with a responsible person. I agree that I will not hold Illinois Valley Community Hospital liable for the loss or damage to any money, jewelry, glasses, dentures, documents, fur coats, or other articles, goods or property of any kind and description. I agree to inform the nursing staff of any valuables in my possession.

4. I authorize Illinois Valley Community Hospital to retain, preserve and use for scientific or teaching purposes or to dispose of any specimen or tissue taken from my body during my hospitalization.

5. In the event I am transferred to another health care facility, I authorize Illinois Valley Community Hospital to release information and/or copies of my medical record or portions thereof to such other healthcare facility and/or provider(s) in the event of such transfer. I further authorize the facility and any provider(s) to which I am transferred to provide information to Illinois Valley Community Hospital upon request of the hospital regarding the care, condition and treatment of myself.

6. I authorize the use of my medical records for quality assurance and/or risk management purposes. I further authorize any healthcare provider, including my provider(s), and consulting provider(s), to provide information to the hospital upon request concerning my care, condition and treatment.

7. In the event a health care provider sustains exposure to my blood and/or body fluids, I give permission for a sample of my blood to be drawn and tested for infectious disease of any nature and description.

8. PAYMENT FOR SERVICES AND RELEASE OF INFORMATION

I authorize Illinois Valley Community Hospital to release and/or send any medical information deemed by it to be necessary for the processing and payment of my hospital bills to any insurance company or other third party payor who is or may be responsible for paying any part of my medical treatment. **I understand this information may include the diagnosis of and treatment for mental illness, drug and alcohol abuse, human immunodeficiency virus, and genetic testing.** I understand this authorization is furnished to enable the hospital, the provider(s) for whom the hospital is authorized to bill, and also provider(s) who bill on behalf of themselves, and me, to obtain or attempt to obtain proceeds, benefits or amounts due to me or to members of my family from insurance companies or third party payors due to my treatment and hospitalization. In consideration of the hospital's cooperation in securing or attempting to secure said amount on my behalf, I release the hospital, it's agents, servants, employees and attorneys from all responsibilities and/or liabilities incidental to their release of my hospital records and other information.

Exhibit B





BELL, JOSHUA K

Visit ID: 11561894

10/05/1982          37Y/M
MRN: 270311

**Illinois Valley Community Hospital**
925 West Street, Peru, Illinois 61354
815-223-3300

Caring Professionals

I further authorize the hospital to release and/or send copies of my hospital records or portions thereof to my referring provider(s) and to providers on the staff of the hospital or other hospitals which were consulted in regard to my treatment, for their use in releasing information to third parties for the purpose of billing and collection amounts due to them for services rendered. **I understand this information may include the diagnosis of and treatment for mental illness, drug and alcohol abuse, human immunodeficiency virus, and genetic testing.**

9. IMPORTANT MESSAGE FROM MEDICARE: My signature only acknowledges my receipt of this "Important Message from Medicare" from Illinois Valley Community Hospital and does not waive any of my rights to request a review or make me liable for any payment.

10. ASSIGNMENTS OF INSURANCE BENEFITS: In the event I am entitled to benefits arising out of any policy insuring me, those benefits are hereby assigned to Illinois Valley Community Hospital for application   to my bill.

11. FINANCIAL AGREEMENT: It is understood, whether I sign as agent, or as patient, or as 'Guarantor', I am directly responsible and will pay for services rendered and not paid by insurance. Illinois Valley Community Hospital may obtain a consumer report on me from any Consumer Reporting Agency. Should the account be referred for collection, I (patient, agent, and/or 'Guarantor') shall pay all reasonable costs of collection **including but not limited to attorneys' fees** incurred as a result of any suit or claim that may be filed or asserted in connection  there within.

12. I have been informed of my patient rights and responsibilities.   PATIENTS INITIALS X_____
By signing below, I acknowledge that I have received a copy of Illinois Valley Community Hospital Notice of Privacy Practices.

13. **I do acknowledge and certify I have read the general conditions of admission and I am the patient or I am duly authorized to execute this acknowledgement on behalf of the patient. I accept the terms of this agreement.**

X verbal consent                              BY   self
_____                          _____
Patient Signature

_____                          07/06/2020          11:00 PM
Relationship to Patient                          Date                Time

          BC                                      07/06/2020          11:00:31 PM
_____                          _____   _____
Witness Signature                                Date                Time

Exhibit   B

## ASSIGNMENT OF CLAIM FOR COLLECTION

Debtor(s)  JOSHUA BELL
Amount Owed:  $2,632.79

For good and valuable consideration, **ST. MARGARET'S HEALTH SPRING VALLEY,** (hereinafter "Creditor") as owner and holder of the above claim against Debtor(s), hereby assigns all rights and interest in the above claim to COLLECTION PROFESSIONALS, INC. (hereinafter "Collection Agency" or Agency"). It is expressly agreed that the Collection Agency may initiate proceedings in its own name or take any lawful action deemed necessary by it to obtain satisfaction of the claim.

The parties acknowledge that this assignment is pursuant to 225 ILCS 425/8b of the Illinois Collection Agency Act. Collection Agency agrees to pay to Creditor **65%** of the net proceeds that Collection Agency recovers from Debtor. The net proceeds shall be defined as all payments by Debtor to Agency upon the claim, excluding payments made upon judgment interest and **after** reimbursement to Agency of any sums advanced or expended by Agency for court costs, service fees or other disbursements or expenses necessarily and reasonably incurred by Agency in the prosecution of collection of this account.

Creditor hereby warrants as follows:
1. Creditor is valid owner of said claim, which debt has not been previously assigned or conveyed. Further the debt has not been discharged by bankruptcy or release.
2. That the services or merchandise upon which the claim is based were sold, furnished and delivered to Debtor at Debtor's request. That the charges made were reasonable or agreed upon prices.
3. That Collection Agency shall not be required to assume any obligation or liability Creditor may owe Debtor.
4. That Creditor shall take no action to discharge the debt or hinder the collection of the debt after the effective date of this Assignment to Agency.
5. That allowing all proper credits and setoffs, there is due and owing from the Debtors(s) the sum of  $2,632.79  as hereinabove set forth.
6. That this Assignment is a voluntary assignment of Creditor's account against Debtor.
7. Creditor agrees to cooperate as necessary with Agency in the collection of this matter and supply Agency with information, documents or materials required to properly collect the claim, including witnesses as needed for trial upon the claim.
8. That the undersigned has the authority to execute and acknowledge this Assignment on behalf of Creditor.

The effective date of this Assignment is _____JANUARY 27, 2022_____

By: _Carrie Mrowicki_      _Carrie Mrowicki_
       Signature                  Print Name

Creditor or its Authorized Representative:  **ST. MARGARET'S HEALTH SPRING VALLEY**

**Please Return to:**
**CPI, PO Box 416, 723 First St., Lasalle IL 61301 * 815-223-0804 * FAX: 815-223-0896**

This is an attempt to collect a debt and any information obtained will be used for that purpose

Exhibit C

# EXHIBIT C

EXHIBIT C

FILED
13TH JUDICIAL CIRCUIT
7/13/2023 11:29 AM
JM

*Greg Vaccaro*
CLERK OF THE CIRCUIT COURT
LASALLE COUNTY, ILLINOIS

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
LASALLE COUNTY, OTTAWA, ILLINOIS**

COLLECTION PROFESSIONALS, INC.,      )
                                           )
        Plaintiff,                       )
                                           )
vs.                                             )       No. 22-LM -111
                                           )
JOSHUA K. BELL                       )
                                           )
        Defendant.                    )

<u>AMENDED COMPLAINT</u>

NOW COMES the Plaintiff, COLLECTION PROFESSIONALS, INC, by and through its attorneys, APLINGTON, KAUFMAN, MCCLINTOCK, STEELE & BARRY LTC, and hereby complains of Defendant, JOSHUA K. BELL, as follows

<u>COUNT I</u>

1.       Plaintiff is a collection agency with its principal office located in Macomb, Illinois.

2.       ST. MARGARET'S HEALTH PERU f/k/a ILLINOIS VALLEY COMMUNITY HOSPITAL, INC  (herein "Hospital") has assigned the rights to certain accounts of Defendant to Plaintiff,. A true and correct copy of the Assignment of Claim for Collection is attached hereto as Exhibit A and incorporated herein by this reference.

3.       That Hospital is a consolidation of the former ILLINOIS VALLEY COMMUNITY HOSPITAL and ST MARGARETS HOSPITAL SPRING VALLEY by merger in January 2021, and is now ST MARGARETS HEALTH, with branches in Spring Valley and Peru.  As a result of said merger, Hospital has the ownership of the former ILLINOIS VALLEY HOSPITAL, INC accounts. See news

article "St Margaret's and IVCH Finalize Affiliation" attached hereto and made a part hereof by this reference as Exhibit H.

4. Defendant resides in the City of Peru, LaSalle County Illinois.

5. Defendant requested and received medical or other healthcare services from ST. MARGARET'S HEALTH PERU f/k/a ILLINOIS VALLEY COMMUNITY HOSPITAL, INC .

6. Services rendered by Hospital were medically necessary, and the charges for said services were reasonable and customary.

7. That Defendant on January 6, 2020 sought services from the former Illinois Valley Community Hospital now ST MARGARETS HEALTH/PERU and executed by verbal consent a General Consent and Financial Agreement, that provided among other things, for the recovery of collection fees and reasonable attorney fees for collection actions, a copy of which is attached hereto as Exhibit B.

8. That pursuant to Defendant's request and agreement, Hospital supplied medical treatment and services to Defendant on July 6, 2020 and July 7, 2020, an itemized statement of said services and charges is attached hereto as Exhibit C.

9. That the services Hospital administered were necessary services in the treatment of Defendant

10. Defendant has failed to make full payment for the services rendered.

11. Defendant remains liable to Plaintiff in the amount of $12,179.00.

WHEREFORE, the Plaintiff prays this Court for the following relief.

A.     Entering judgment in favor of Plaintiff and against Defendant in the sum of $12,179.00.

B.     Awarding Plaintiff its court costs and fees.

C.     Awarding to  Plaintiff its reasonable attorney fees

D.     Granting to  Plaintiff  such  other  and  further  relief  as  the  Court deems just and proper.

## COUNT II

12.     Plaintiff is a collection agency with its principal office located in Macomb, Illinois.

13.     ST. MARGARET'S HEALTH/SPRING VALLEY (herein "SVH")") has assigned the rights to certain accounts of Defendant to Plaintiff,. A true and correct copy of the Assignment of Claim for Collection is attached hereto as Exhibit D and incorporated herein by this reference.

14.     That SVH is a consolidation of the former ILLINOIS VALLEY COMMUNITY HOSPITAL and ST MARGARETS HOSPITAL SPRING VALLEY by merger in January 2021, and is now ST MARGARETS HEALTH, with branches in Spring Valley and Peru.  As a result of said merger, Hospital has the ownership of the former ILLINOIS VALLEY HOSPITAL, INC accounts. See news article "St Margaret's and IVCH Finalize Affiliation" attached hereto and made a part hereof by this reference as Exhibit H.

15.     That on June 19, 2017 Defendant sought services from St Margarets Health/Spring Valley and executed an Agreement to Pay a copy of

which agreement is attached hereto as Exhibit E and made a part of this affidavit by reference.

16.     That pursuant to Defendant's request and agreement, Hospital supplied medical treatment and services to Defendant on June 19, 2017, and June 23, 2017, an itemized statement of said services and charges is attached hereto as Exhibit F.

17.     That the services Hospital administered were necessary services in the treatment of Defendant.

18.     .Defendant has failed to pay account and there is an unpaid balance of $2,632.79 and which Defendant has wholly failed and refused to pay, although frequently requested to do so.

WHEREFORE, the Plaintiff prays this Court for the following relief.

A.     Entering judgment in favor of Plaintiff and against Defendant in the sum of $2,632.79.

B.     Awarding Plaintiff its court costs and fees.

C.     Awarding to Plaintiff its reasonable attorney fees

D.     Granting to Plaintiff such other and further relief as the Court deems just and proper.

Plaintiff, COLLECTION PROFESSIONALS, INC

By:_____

One of Its Attorneys

Robert B. Steele #2712407
Aplington, Kaufman, McClintock,
Steele & Barry, Ltd.
160 Marquette St.
PO Box 517
LaSalle, IL 61301
Phone 815-224-3200 Fax 815-224-3205

## CERTIFICATION

Under penalties as provided by law, pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters and undersigned certifies as aforesaid that verily believes the same to be true.

**COLLECTION PROFESSIONALS, INC.** by its officer